Mara KIRSH, Plaintiff–Petitioner,

v.

Felice MICHETTI, as Commissioner of the New York City Department of Housing Preservation and Development, Phillip A. Grimaldi, as Sheriff of New York City, Harry Weisberg, as Under Sheriff for New York County, N.Y., and Barney Carbin, as Under Sheriff for Bronx County, N.Y., Defendants–Respondents.

No. 92 Civ. 198 (RLC).

United States District Court, S.D. New York.

March 24, 1992.

Eleanor Jackson Piel, New York City, Robert Cammer, Larchmont, N.Y., for plaintiff-petitioner.

O. Peter Sherwood Corp. Counsel (Janessa Nisley, Jerald Horowitz, Gail Donoghue, of counsel), New York City, for defendants-respondents.

## OPINION

ROBERT L. CARTER, District Judge.

Mara Kirsh petitions this court for a writ of habeas corpus preventing the Sheriff defendants from imprisoning her pursuant to an order of the New York City Civil Court. She also advances a claim for the same relief under 42 U.S.C. § 1983. The history of this case is essential to the determination of the petition, and accordingly is set forth below.

Mara Kirsh and her husband own an apartment building on Elizabeth Street in New York City. Various housing code violations were brought to the attention of the New York City Department of Housing Preservation and Development ("HPD"), and HPD petitioned the Civil Court to appoint an administrator for the property under New York Real Property Actions and Proceedings Law, Art. 7–A (McKinney 1979). On March 1, 1988 the Civil Court appointed a 7–A administrator for the property and ordered Kirsh not to interfere with the administrator's management of the property and to turn over control of the premises to that administrator.

In April, 1988, HPD moved before the Civil Court to have Kirsh held in civil and criminal contempt for having interfered

with the management of the building and having refused to surrender control of the entire building to the administrator. Kirsh appeared on the scheduled date and obtained a continuance of the contempt hearing. On July 5, 1988, the continued contempt hearing was held, but Kirsh failed to appear. The Civil Court held an inquest at which three witnesses testified and other evidence was received. A court stenographer was present at the hearing, but apparently no transcript of the hearing was recorded or produced. On August 2, 1988, the Civil Court issued an opinion finding Kirsh in civil and criminal contempt of court for failing to obey the March 1, 1988 order. Kirsh was fined and sentenced to 30 days in prison.

Kirsh moved to vacate the default judgment of contempt, but the Civil Court denied this motion on September 1, 1988. The Appellate Term, First Department affirmed this denial on January 19, 1989. Kirsh was still not sent to prison, however, apparently because HPD could not locate her. In November, 1989, Kirsh moved to reopen both her contempt adjudication and the original appointment of the 7–A administrator for her building. Kirsh then modified this renewal motion by withdrawing her application to reopen the 7–A administration proceeding and the substance of the contempt adjudication, choosing instead to focus her application for reconsideration solely on the appropriateness of the prison term imposed for the contempt. The Civil Court granted the reconsideration application and, after a hearing, reduced the prison sentence from 30 to 15 days in February, 1990.

Kirsh appealed this decision, arguing to the Appellate Term that the lack of a transcript for the hearing that was the basis of her contempt judgment violates the due process clause of the United States Constitution. In May, 1991, the Appellate Term affirmed the Civil Court's order on the grounds that the prison term was not an abuse of discretion and that the constitutional claims had not been preserved for appellate review, since they had not been raised on the earlier appeal or pursued at the reconsideration hearing. The Appellate Division and the New York Court of Appeals each denied review of the Appellate Term's decision on procedural grounds, without opinion.

■ This petition for habeas corpus and for relief under Section 1983 followed.[1] The petition challenges the constitutionality of the contempt commitment on the grounds that the lack of a transcript of the evidentiary hearing, and the lack of sufficient findings of fact in the decision itself, constitute a due process violation.

I.

■ As an initial matter Kirsh's assertion that she states a valid claim for relief under 42 U.S.C. § 1983 must be rejected. While "a § 1983 action is a proper remedy for a state prisoner who is making a constitutional challenge to the conditions of his prison life," *Preiser v. Rodriguez*, 411 U.S. 475, 499, 93 S.Ct. 1827, 1841, 36 L.Ed.2d 439 (1973), Kirsh makes no claim about the conditions of her prospective confinement. Instead, she seeks to challenge the judgment under which the city seeks to imprison her. As explained in *Preiser*, "when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." 411 U.S. at 500; *see also McCarthy v. Bronson*, —— U.S. ——, 111 S.Ct. 1737, 1741, 114 L.Ed.2d 194 (1991); *Abdul–Hakeem v. Koehler*, 910 F.2d 66, 68–69 (2d Cir.1990). Thus Kirsh cannot avoid the numerous requirements that accompany a petition for a writ of habeas corpus by invoking section 1983.

---

1. A habeas petitioner must establish that he is "in custody in violation of the Constitution or laws ... of the United States." 28 U.S.C. § 2254(a). However, since the "in custody" requirement has been interpreted to include any substantial restraint of liberty not shared by the public generally, Kirsh's threatened imprisonment for contempt of court satisfies that requirement. *See Hensley v. Municipal Court*, 411 U.S. 345, 351, 93 S.Ct. 1571, 1574–75, 36 L.Ed.2d 294 (1973); *Jones v. Cunningham*, 371 U.S. 236, 243, 83 S.Ct. 373, 377, 9 L.Ed.2d 285 (1963).

## II.

■ Since she states no claim for relief under section 1983, Kirsh must resort to her petition for habeas corpus. Respondents argue that this court may not consider the constitutional arguments advanced in Kirsh's habeas petition because of a procedural default in the state court. To determine whether there was a procedural default, the court must look to the basis of decision in the last reasoned opinion by a court considering the petitioner's appeals. *Ylst v. Nunnemaker*, — U.S. —, 111 S.Ct. 2590, 2594, 115 L.Ed.2d 706 (1991). In this case that decision is the 1991 Appellate Term opinion reviewing the Civil Court's 1990 reconsideration of the contempt commitment, which reads in relevant part as follows:

> The fifteen-day jail sentence imposed for criminal contempt represented a permissible exercise of the court's discretion and was not excessive. Appellant's constitutional challenge to the underlying adjudication of contempt, neither raised on the prior appeal to this court nor pursued at the hearing on appellant's renewal motion below, has not been preserved for appellate review (see, *Matter of Chauvel v. Nyquist*, 55 A.D.2d 76, 79 [389 N.Y.S.2d 636 (1976)], aff'd 43 N.Y.2d 48 [400 N.Y.S.2d 753, 371 N.E.2d 473 (1977)]). In any event, the claim is without merit.

Complaint, Ex. 7. Thus the Appellate Term held that Kirsh was procedurally barred from raising her constitutional claims on appeal.

■ Under the "plain statement rule" announced in *Michigan v. Long*, 463 U.S. 1032, 1042–43, 103 S.Ct. 3469, 3477, 77 L.Ed.2d 1201 (1983), and extended to federal habeas corpus cases in *Harris v. Reed*, 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989), such a procedural default prevents federal habeas review where the state court " 'clearly and expressly' states that its judgment rests on a state procedural bar." *Harris, supra*, 489 U.S. at 263, 109 S.Ct. at 1043–44. Since the Appellate Term's decision clearly states that "[a]ppellant's constitutional challenge ... has not

been preserved for appellate review," it satisfies the plain statement rule, insulating the decision from federal habeas corpus review.

Kirsh argues that the fact that the Appellate Term addressed the merits of the constitutional issue (albeit briefly) makes her case reviewable in federal court. However, the Supreme Court has explicitly held that a state court's alternative holding addressing the merits of a constitutional issue does not invalidate a separate procedural ground of decision. As the Court explained in *Harris:*

> [A] state court need not fear reaching the merits of a federal claim in an *alternative* holding. By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law.... *[Wainwright v.] Sykes* [433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)] curtails reconsideration of the federal issue on federal habeas as long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision. In this way, a state court may reach a federal question without sacrificing its interests in finality, federalism, and comity.

489 U.S. at 264 n. 10, 109 S.Ct. at 1044 n. 10 (emphasis in original).

Furthermore, the cases Kirsh cites in support of her argument are clearly distinguishable. In *Harris, supra*, the state court remarked that the prisoner's claims "could have been raised [on] direct appeal" but then went on to decide the claims on their merits. The Supreme Court permitted federal habeas review of the constitutional claims, finding the reference to the state procedural rule an insufficiently clear statement that the procedural bar was an independent basis for the state court's decision. Here, the Appellate Term's reference to the procedural bar is not the ambiguous "could have" of the state court in *Harris* but instead is a definitive statement that Kirsh's constitutional claims have "not been preserved for appellate review." This

constitutes a clear statement by the state court that the procedural grounds are an independent and adequate basis for its decision.

Kirsh also seeks to rely on *Caldwell v. Mississippi*, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), where a prisoner had not raised a constitutional issue on his appeal to the state supreme court. The state court raised the constitutional issue *sua sponte* and addressed its merits, while also mentioning the court's general rule that issues not raised on appeal are deemed waived. Given the lengthy discussion of the merits and the fact that there was no clear statement of independent reliance on Mississippi procedural law, the Supreme Court determined that the decision "fairly appear[ed] to rest primarily on federal law," *Caldwell, supra,* 472 U.S. at 327, 105 S.Ct. at 2638, and therefore was open to federal habeas review. The Appellate Term's decision, in contrast, does contain a clear statement that the constitutional claims were not preserved for its review and a citation to authority establishing the governing rule of state procedure. Thus the ambiguities of *Harris* and *Caldwell* are not present in this case, and the plain statement rule is satisfied.

### III.

■ Kirsh's procedural defaults, relied upon by the Appellate Term as an adequate and independent basis for its decision, therefore generally bar federal habeas corpus review of Kirsh's constitutional claims. However, federal habeas review is permissible if Kirsh "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson,* — U.S. ——, 111 S.Ct. 2546, 2565, 115 L.Ed.2d 640 (1991). Since the Appellate Term relied upon two procedural defaults, namely Kirsh's failure to raise the constitutional claims on her first appeal and her failure to pursue them on her renewal motion below, Kirsh will have to demonstrate cause and prejudice for both defaults before being relieved of the bar to federal habeas review.

Kirsh never precisely argues cause and prejudice in her briefs, but the arguments she does raise can be fit within this framework. First, Kirsh argues that she did not raise the constitutional issue on her first appeal to the Appellate Term because she was not required to do so. Second, she asserts that, contrary to the Appellate Term's holding, she did raise and "pursue" her due process claim at her renewal motion hearing.[2]

■ Kirsh's first argument, that she had cause for not raising the constitutional issue on her first appeal since she was not required to do so, has merit. Kirsh notes that after she was adjudged in contempt of court in 1988, she moved to vacate that default judgment. The Civil Court denied her motion, and it was from that denial that she took her first appeal to the Appellate Term. The first procedural default that the Appellate Term later relied upon in its 1991 decision was Kirsh's failure to raise her constitutional claims on this first appeal to the Appellate Term in 1989.

Here, Kirsh asks the court to decide that the Appellate Term's reasoning in finding her to have committed two procedural defaults was faulty, and thereby to excuse her from the limitations of *Harris* and *Long.* Such an in-depth examination by a federal court of the reasoning behind state court decisions raises concerns of federalism and the proper balance of power between the federal and state judiciaries. However, given the gravity of the issues underlying Kirsh's habeas petition, the court undertakes the examination along the lines urged by Kirsh.

---

**2.** Kirsh's arguments do not fit within the typical "cause" arguments, since she argues more that the Appellate Term was incorrect in its statement that she committed procedural defaults than that she had cause for the procedural failures. While neither party has briefed the issue of whether a federal court may determine not only what the state court's proffered reasoning was, but also whether that reasoning was correct, at least one federal court has actually undertaken this analysis. *See Alston v. Lopes,* 621 F.Supp. 992, 994 n. 1 (D.Conn.1985) (deciding that an issue was preserved for federal habeas review despite state supreme court's refusal to address the issue because it had been waived).

However, since Kirsh appealed from a denial of a motion to set aside the default judgment, not from the default judgment itself, the substance of the default contempt adjudication was never before the Appellate Term, and New York procedural law did not obligate or even allow Kirsh to raise her constitutional objections to the underlying contempt adjudication at that time. As the New York Court of Appeals has explained, a motion to set aside a default judgment

> can never result in a decision of the issues involved in the controversy, since it is always predicated on the fact that the defaulting party has lost the opportunity to present the issue to the court, and the question always is whether the party applying should be permitted to plead.

*Bannon v. Bannon,* 270 N.Y. 484, 491, 1 N.E.2d 975 (1936); *cf. United States v. Cirami,* 563 F.2d 26, 33 (2d Cir.1977); *Wagner v. United States,* 316 F.2d 871, 872 (2d Cir.1963). Since the motion to vacate could not involve the substance of the contempt adjudication, Kirsh was not required to raise her constitutional claims on that motion or on her appeal from the denial of that motion. Therefore, Kirsh had cause for her failure to raise the due process issues on her first appeal to the Appellate Term, and that failure should not constitute a procedural default.

Kirsh presents another justification for her failure to raise the due process issue on her first appeal. New York law provides that an order granting reargument supersedes the earlier order, even if the new order ultimately adheres to the terms of the original decision. *See Mastan Company v. Weil,* 84 A.D.2d 657, 444 N.Y.S.2d 315 (2d Dept.1981); *Doyle v. Hamm,* 52 A.D.2d 899, 383 N.Y.S.2d 373 (2d Dept. 1976); *Dennis v. Stout,* 24 A.D.2d 461, 260 N.Y.S.2d 325 (2d Dept.1965). The order after reconsideration is a new judgment, and everything within that new judgment is open for challenge on appeal, even if an appeal had been taken from the prior judgment. *Council Commerce Corp. v. Paschalides,* 92 A.D.2d 579, 459 N.Y.S.2d 463, 464 (2d Dept.1983); *Mastan Co., supra,* 444 N.Y.S.2d 315, 317. Since the Civil Court granted Kirsh's motion for reconsideration of the default judgment in November, 1989, the earlier contempt judgment of August 2, 1988 was superseded, and an appeal from proceedings related to that judgment cannot form the basis for a procedural default.

■ Kirsh's assertion of cause for the second procedural default relied upon by the Appellate Term, however, is unavailing. That court observed that Kirsh's constitutional claims were not "pursued at the hearing on appellant's renewal motion below, [and have therefore] not been preserved for appellate review." Complaint, Ex. 7. Kirsh asserts that in fact she did raise her due process challenge at both the renewal hearing and in the papers she submitted to the Civil Court in preparation for that hearing. In effect, Kirsh's argument for cause on this default is that the Appellate Term was in error when it found her to have defaulted.[3]

A review of the transcript of the renewal hearing conducted before the Civil Court judge on January 9, 1990, that court's decision of February 13, 1990, reducing the prison sentence from 30 to 15 days, and all of the papers submitted to the court in connection with the renewal motion, demonstrates that Kirsh did not pursue her constitutional claims on that motion, and that the Appellate Term was therefore correct in concluding that those issues were not preserved for appellate review. What complicates this inquiry, and divides the parties on this issue, is the fact that Kirsh initially presented the constitutional issues to the Civil Court but then withdrew them from its consideration before and during the renewal hearing. Kirsh maintains that any mention of the constitutional issues at

---

**3.** Once again, Kirsh asks the court to evaluate the correctness of the Appellate Term's finding that she defaulted on certain claims, here by asking the court to review *de novo* whether in fact she did raise certain issues at her renewal hearing. Despite concern that such an inquiry will infringe on the proper role of the state courts, the court again undertakes the analysis urged by Kirsh because of the importance of the constitutional issues alleged in her petition.

the hearing or in her papers is sufficient to "fairly present" them to the state courts and thereby to prevent her default. Respondents reply that even if Kirsh mentioned the constitutional issues at some point, if she actually withdrew them from the court's consideration, they were not fairly presented to the trial court, and were not preserved for appellate or habeas review.

When Kirsh initially made her renewal motion to the Civil Court in November, 1989, she sought to reopen both her contempt adjudication and the appointment of the 7–A administrator for her building. In the papers submitted with that motion, Kirsh argued the constitutional infirmity of the contempt adjudication, pointing to the lack of a stenographic record of the hearing that formed the basis of the contempt judgment and the lack of sufficiently specific findings of fact in the contempt judgment itself. However, in January, 1990, before the hearing on the renewal motion was held, Kirsh's counsel filed a supplementary affidavit, entitled "Affirmation of Attorney concerning present status of case and further request for leniency." R2.82.[4] In this affirmation, Kirsh expressly stated that "we are withdrawing without prejudice the application to reopen the 7–A judgment and to reopen the substance of the contempt proceeding." R2.83. She proceeded to urge the court "to reconsider the contempt sanction" on the ground that the punishment Kirsh was facing for vaguely related perjury charges was sufficient, and that a prison sentence here too would constitute "inhumane overkill." *Id.*

At the hearing on the renewal motion, Kirsh, through her counsel, repeated her intention to reopen only the sanctions portion of the contempt adjudication. The transcript is rife with evidence of this focus. For example, early on in the hearing the following exchange occurred:

> THE COURT: So that as I understand it, the only matter that is now in front of me consists of your application for a

modification of the terms of the contempt order.

> COUNSEL FOR KIRSH: Yes.

R2.11. When the constitutional issue that Kirsh seeks to argue in her habeas petition came up later in the hearing, this exchange occurred:

> THE COURT: There was a record, there's no doubt in my mind there was—
>
> COUNSEL FOR KIRSH: I don't want to argue about anything, anything having to do with that because I'm asking your Honor for mercy here.

R2.24. Thus throughout the hearing Kirsh reiterated that she sought review of the sanctions portion of the contempt adjudication, not of the validity of the contempt adjudication itself, and that she did not wish to press her due process argument to the court.

In support of her argument that she raised the constitutional issue below simply by mentioning it in her papers and at the hearing, Kirsh cites several cases establishing the standard for determining whether constitutional issues asserted on habeas were first "fairly presented" to the state courts. It is well settled that a federal court does not have jurisdiction to hear a claim on federal habeas review unless it has been "fairly presented" to the state court first. *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971). Satisfying the fair presentation requirement is not overly burdensome; claims may be fairly presented to the state court by citation to federal and state cases "employing constitutional analysis," by alleging facts "within the mainstream of constitutional litigation," or by reference to particular facts of the case that "call to mind a specific right protected by the Constitution." *Daye v. Attorney Gen. of the State of New York*, 696 F.2d 186, 194 (2d Cir.1982) (in banc), *cert. denied*, 464 U.S. 1048, 104 S.Ct. 723, 79 L.Ed.2d 184 (1984). *See, e.g., Abdurrahman v. Henderson*, 897 F.2d 71, 73 (2d Cir.1990) (citation to constitutional case in *pro se* supplemental brief

---

**4.** "R2" and a page number refers to the record on the second appeal to the Appellate Term in this case.

sufficient to fairly present constitutional issue to appellate court). In line with these cases, Kirsh claims that her reference to constitutional cases and to the lack of a record in this case, both at the hearing and in the papers submitted to the court, was sufficient fairly to present the issue to the Civil Court on the renewal motion and thereby to preserve the issue for appellate and federal habeas review. This argument, however, amounts to sophistry.

Courts have repeatedly stressed that a habeas petitioner must first present his constitutional claims to the state court in order "to provide an opportunity for that court to hear the claim." *Daye, supra,* 696 F.2d at 191; *see also Picard, supra,* 404 U.S. at 276–77, 92 S.Ct. at 512–13. Kirsh cannot seriously contend that the Civil Court was given a fair opportunity to hear her constitutional claim when she told the judge at every turn that she was "withdrawing ... the application ... to reopen the substance of the contempt proceeding," R2.83; that she wanted the court to "reconsider the contempt sanction," *Id.;* that "the only matter that is now in front of [the court is an] application for a modification of the terms of the contempt order," R2.11; and, when the due process issue was raised, that she did not "want to argue about [the lack of a record] because I'm asking your honor for mercy here." R2.24. Given all of these statements to the judge that she did not want to raise the constitutional issues at the renewal hearing, the mere fact that Kirsh mentioned the lack of a record during that hearing is insufficient fairly to present the issue to the Civil Court for determination. Since the constitutional issue was not properly presented at the renewal hearing, it was not preserved for appellate review, and the Appellate Term was correct in deciding that Kirsh procedurally defaulted on her constitutional claims.

Further reinforcing this view of the fair presentation issue is evidence that Kirsh's decision not to press the constitutional issue at the hearing was a tactical decision. In her briefs to this court, Kirsh discussed her arguments at the renewal hearing and explained:

[I]n requesting "mercy" and in discussing other issues such as proportionality [of the punishment], we sought to indicate to the trial court that we were concerned about the *result,* not necessarily the reasoning to achieve that result; and we had no incentive, if the penalties were eliminated and the issue thereby mooted, to force the trial court explicitly to confront what we had learned was its manifestly momentous error of judicial conduct in failing to see to it that there was a record taken.

Petitioner's Supplemental Brief, at 16. This kind of deliberate decision not to press constitutional claims in state court for tactical reasons underlies the Supreme Court's adoption of the cause and prejudice standard. As the Court observed in *McCleskey v. Zant,* —— U.S. ——, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991), "habeas corpus review may give litigants incentives to withhold claims for manipulative purposes and may establish disincentives to present claims when evidence is fresh." *Id.* 111 S.Ct. at 1469. The exhaustion requirement, along with the cause and prejudice requirement for excusing procedural defaults, are designed to combat just this type of "sandbagging" by defendants. *See Wainwright v. Sykes,* 433 U.S. 72, 89–90, 97 S.Ct. 2497, 2507–08, 53 L.Ed.2d 594 (1977). Particularly in light of this policy concern, Kirsh cannot be considered to have "fairly presented" her due process claim to the trial court.

Since Kirsh cannot demonstrate cause for both state procedural defaults, she is barred from federal habeas review of her constitutional claim unless she can "demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman, supra,* 111 S.Ct. at 2565; *see also Engle v. Isaac,* 456 U.S. 107, 135, 102 S.Ct. 1558, 1575–76, 71 L.Ed.2d 783 (1982). In order to demonstrate that a fundamental miscarriage of justice would result from failure to consider the merits of her constitutional claim, Kirsh must demonstrate her actual innocence. *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986). Kirsh

has not attempted to meet this requirement, and the procedural bar to consideration of her habeas corpus petition therefore remains.

## IV.

Since Kirsh procedurally defaulted on her constitutional claims in state court, and since she has not shown cause for that default or made any showing that failure to consider her claims would result in a fundamental miscarriage of justice, her petition for a writ of habeas corpus must be dismissed. The parties' cross motions for sanctions under Rule 11, F.R.Civ.P., are denied.

IT IS SO ORDERED.